**HITTLE, Appellant,**

**v.**

**HITTLE, Appellee.**

[Cite as *Hittle v. Hittle*, 181 Ohio App.3d 703, 2009-Ohio-1286.]

Court of Appeals of Ohio,
Second District, Darke County.

No. 08CA1735.

Decided March 20, 2009.

Debra A. Lavey, for appellant.

William H. Cooper, for appellee.

———

GRADY, Judge.

{¶ 1} This is an appeal from a final judgment and decree of divorce.

{¶ 2} Susan Hittle and Timothy Hittle were married in December 1986. They had three children. The two older children are emancipated. The youngest child was born on September 4, 2002.

{¶ 3} Susan [1] commenced a divorce action on November 9, 2006. Following Timothy's answer, the matter was referred to a magistrate. The magistrate conducted hearings on October 31 and November 1, 2007.

{¶ 4} The magistrate filed a decision on November 15, 2007. Susan was awarded custody of the parties' minor child. No child support was ordered. There were no existing retirement benefits to divide. Timothy was awarded the marital residence and was ordered to pay Susan for her share of the equity, provisions to which the parties had agreed. Timothy was ordered to pay several small marital debts. He was also ordered to pay spousal support at the rate of $50 per month for five years.

{¶ 5} Susan filed objections to the spousal-support awards. She also objected to the failure to compensate her for her share of retirement benefits that Timothy had dissipated. The court again referred the matter to the magistrate to clarify the spousal-support issue.

{¶ 6} The magistrate filed a second decision explaining her findings and conclusions. Susan again filed objections. The trial court overruled those objections, adopted the magistrate's decision, and granted a decree of divorce. Susan appeals.

## SECOND ASSIGNMENT OF ERROR

{¶ 7} "The trial court abused its discretion by failing to award the plaintiff an amount of spousal support that was reasonable and appropriate pursuant to R.C. 3105.18(c)(1)."

{¶ 8} The factors that the court must consider in determining whether to award spousal support and, if it does, the nature, amount, terms of payment, and duration of support ordered are set out in R.C. 3105.18(C)(1)(a) through (m). The court must evaluate the evidence germane to each applicable factor, and then weigh the need of either party for support against the other party's ability to pay. *Layne v. Layne* (1992), 83 Ohio App.3d 559, 615 N.E.2d 332.

{¶ 9} "The trial court enjoys wide latitude in awarding spousal support and its decisions are reversible only for an abuse of discretion. An abuse of discretion 'connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' *In re Jane Doe 1*

---

1. For clarity and convenience, the parties are identified by their first names.

(1991), 57 Ohio St.3d 135, 566 N.E.2d 1181; *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140." *Layne* at 562, 615 N.E.2d 332.

{¶ 10} The distinctive feature of this case, and the reason for the low amount of spousal support the court ordered, is the low income of the parties. Timothy, who is 44 years old, is disabled and unable to work. He receives net Social Security benefits of $1,024.70 per month. His monthly expenses are $980, including $50 per month that the court ordered him to pay Susan for her equity in the marital residence, which totals $1,233.

{¶ 11} Susan, who is 40 years old, did not work outside the home during most of the marriage. She did not complete high school or obtain a GED. She suffers from asthma, carpal tunnel syndrome, and arthritis, and has applied for Social Security benefits. Susan's sole income, in addition to $50 she will receive from Timothy for her equity in the marital residence, is $429 per month that she receives in Social Security benefits payable by reason of Timothy's disability to the minor child in her custody.[2]

{¶ 12} Susan argues that the $50 per month in spousal support the court ordered is too little to meet her needs. She points out that she and her child have moved in with relatives because she cannot afford a home of her own. Timothy, on the other hand, was awarded the marital residence. In that connection, Timothy reports expenses of $112 per month for cable and telephone service. His girlfriend, who lives with Timothy, helps him with his expenses.

{¶ 13} In finding that $50 per month is a reasonable amount of spousal support, the trial court explained:

{¶ 14} "Regarding the amount of spousal support, it is acknowledged that $50.00 per month is not a large amount. However, the Court must consider many factors, including those listed in R.C. 3105.18. In this case, the parties have very little income available. When considering the Defendant's expenses and obligations regarding payment of marital debt, the amount appears appropriate, especially for the obligee who is receiving social security disability. In fact, an argument can be made that Plaintiff should either earn a minimum wage ($14,560 per year) or have such an income imputed to her for purposes of calculating spousal support."

{¶ 15} It is doubtful that any additional amount of money that Timothy might be able to pay as spousal support would assist Susan in meeting her needs in any substantial way. We might have awarded a slightly greater amount, but our job is not to substitute our judgment for the trial court's but instead to determine whether the trial court abused its discretion by not ordering spousal support in

---

2. The trial court treated that payment as satisfying Timothy's child-support obligation.

an amount calculated to balance one party's need for support against the other party's ability to pay. *Layne.* On the applicable standard, whether in making its order the court manifested an attitude that was unreasonable, arbitrary, or unconscionable, we cannot find that the court abused its discretion.

{¶ 16} The second assignment of error is overruled.

## FIRST ASSIGNMENT OF ERROR

■ {¶ 17} "The trial court abused its discretion in limiting appellee's obligation to pay spousal support for a period of five years."

■ {¶ 18} Spousal support should be terminable at some point prior to death or remarriage, but in marriages of long duration or those involving a homemaker spouse with little opportunity to develop meaningful employment outside the home, longer term or permanent spousal support may be ordered. *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 554 N.E.2d 83.

{¶ 19} The court ordered Timothy to pay Susan spousal support in installments of $50 per month for a term of five years. The court retained jurisdiction to modify its order. Therefore, the court may in the future extend the terms of the award beyond five years if it "determines that the circumstances of either party have changed." R.C. 3105.18(E). A "change [of circumstances] includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses." R.C. 3105.18(F).

{¶ 20} The parties were married for more than 20 years. During that time, Susan was the homemaker. It appears that she had little opportunity to develop meaningful employment outside the home, in view of her lack of education and responsibility for the parties' three children. The court may have limited its spousal-support order to five years as an inducement to Susan to improve her prospects of employment through education and training, which is a proper goal. *Layne.* The court's suggestion that it might impute lost income to Susan implies a view that she is capable of earning an income.

{¶ 21} The difficulty with that proposition is that if Susan is unable to attain those goals, she will have the burden to demonstrate changed circumstances in order to obtain an extension of the five-year term that the court ordered. However, her inability to change the current circumstances that weigh against Susan's employment prospects could not be a change for purposes of R.C. 3105.18(F), and at this time it is not possible to know whether Susan will be able to improve her prospects within five years. Therefore, applying the considerations in *Kunkle,* we find that the trial court abused its discretion when it did not order spousal support for a more substantial term of years.

{¶ 22} The first assignment of error is sustained.

### THIRD ASSIGNMENT OF ERROR

{¶ 23} "The trial court abused its discretion when it failed to award appellant any portion of appellee's retirement benefits."

{¶ 24} Timothy owned a 401K retirement account. He testified that he made withdrawals from the account in 2004 and 2005. Timothy further testified that he made a final withdrawal of $2,416.74 in 2006, shortly after he and Susan had separated. When asked whether he gave any of those monies to Susan, Timothy replied:

{¶ 25} "No. I could not be in contact with her because of the protection order that was in effect at the time and I was unemployed and behind on house payments and stuff so I used the money to catch up our house payment and to live on."

{¶ 26} The magistrate's decision made no award with respect to Timothy's $2,416.74 withdrawal. Susan objected that she is entitled to an equitable share of the withdrawal.

{¶ 27} The trial court did not address Susan's objection. On the second referral the court ordered, the magistrate explained that no award was made to Susan because, when Timothy withdrew and expended the funds, he "was laid off again, had no income, and had to make house payments."

{¶ 28} Susan renewed her objection. The trial court overruled the objection, stating:

{¶ 29} "The testimony indicated that this asset was dissipated to pay expenses for the family, presumably prior to the separation. There was no testimony to establish that the funds were converted to the Defendant's personal account or that they otherwise have been hidden from the Plaintiff. It would be inequitable to allow Plaintiff the benefit of these funds to pay living expenses and/or debts and then to grant her some additional portion of the asset after it has been dissipated."

{¶ 30} The trial court's findings conflict with Timothy's testimony that he withdrew the funds after the parties had separated and used them, at least in part, to live on. Timothy also testified that he did not make Susan aware that he withdrew the funds. The fact that a protection order was in effect at the time would not reasonably prevent Timothy from doing that.

{¶ 31} Susan's argument assumes that the $2,416.74 that Timothy withdrew and expended is marital property that the court had a duty to divide equally. R.C. 3105.171(A)(3)(i) defines marital property to include: "All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by

either or both of the spouses during the marriage." "During the marriage" means "the period of time from the date of the marriage through the date of the final hearing in an action for divorce," but if the court determines that either of those dates "would be inequitable, the court may select dates that it considers equitable in determining marital property." R.C. 3105.171(A)(2).

{¶ 32} The final hearing in the divorce action Susan filed was on October 31 and November 1, 2007. The trial court did not find that any other date would be equitable for purposes of property division. On this record, because the retirement fund was not property Timothy "currently owned" on the dates of the final hearing, the court had no statutory duty to divide it.

{¶ 33} Susan relies on *Berish v. Berish* (1982), 69 Ohio St.2d 318, 320, 23 O.O.3d 296, 432 N.E.2d 183, in which the Supreme Court wrote:

{¶ 34} "[I]nequity would likely result if this court were to blindly equate the termination of a marriage to the dissolution of a business partnership, and accept the position that if marital assets can disappear before the entry of the final divorce decree, the trial court loses all jurisdiction to divide and determine the equities therein since said assets and liabilities must be in existence at the moment of distribution. If a trial court was rendered powerless to recognize and determine property rights in assets that do not exist at the time of the final decree, one party, from the time of separation to the time of the final decree, could withdraw all funds and, unilaterally and with impunity, squander the fruits of the marital labor. Such a position would not only be antithetical to public policy, but also to prior case law."

{¶ 35} We do not read *Berish* to hold that in every case the court must look back to when marital assets were expended by one of the spouses. *Berish* merely explains the basis for the court's choice of a date different than the final hearing date when the court finds that choice would be equitable. R.C. 3105.171(A)(2)(b). The domestic relations court is a court of equity, R.C. 3105.0111, and an equitable division of all property is the principle guiding the court's decisions. R.C. 3105.171(B).

{¶ 36} Susan does not explain how a date prior to the 2007 final-hearing dates would have been a more equitable starting point for determining the parties' marital property. The parties separated in 2006, and shortly after that Timothy withdrew the funds. He expended those funds, at least in part, to make payments on the mortgage of the marital residence. Susan obtains some benefit from that expenditure because it preserved her equity in the property, for which she is now being compensated. It appears, from the finding that it made, that the trial court was persuaded that protecting Susan's interests in that respect outweighed any reason to find that the earlier date of Timothy's withdrawal

would be a more equitable basis for determining and dividing property. We find no abuse of discretion.

{¶ 37} The third assignment of error is overruled.

## CONCLUSION

{¶ 38} Having sustained the first assignment of error, the judgment of the trial court is reversed in part, and the case will be remanded for further proceedings consistent with this opinion. The judgment will otherwise be affirmed.

Judgment affirmed in part
and reversed in part,
and cause remanded.

DONOVAN, P.J., and FROELICH, J., concur.